MARY TUTT v. JANE JACKSON.

[39 South. Rep., 420.]

INSURANCE. *Right to proceeds of policy. Benefit certificate. Benevolent society. Devises.*

A member of a benevolent order whose life insurance was evidenced by a certificate, or policy, payable to his "widow or other heir," issued under a by-law prescribing the form of certificates and making them payable to the "widows or heirs" of members, cannot by will deprive his widow of her right to the fund, although another by-law of the order provides that the money should go to the "widow, heirs, or other legal representatives" of a deceased member.

FROM the chancery court of Lauderdale county.

HON. JAMES L. MCCASKILL, Chancellor.

Mrs. Tutt, the appellant, was the complainant in the court below; Mrs. Jackson and the Colored Grand Lodge Knights of Pythias of Mississippi, a benevolent society, were defendants there. From a decree in defendants' favor the complainant appealed to the supreme court.

The object of the suit was to compel the grand lodge to pay to the complainant an insurance policy or benefit certificate issued by it to one George Tutt, deceased. Both women claimed the fund—$300—and the grand lodge, to be rid of them, paid the money into court and was discharged, leaving the women to litigate between themselves the question as to which of them was entitled to the money.

George Tutt and the appellee, Jane—now called Jane Jackson —married and lived together for a number of years, and, the course of love not running smoothly, they separated without being divorced. George shortly thereafter went through the form of marriage with the appellant, Mary—commonly called Mollie Tutt—and Jane took such a liking to one James Jackson, commonly called Jim Jackson, that she, being thereunto duly

requested, went through the form of marriage with him.    The respective parties lived as if married, but their pretended marriages were utterly void.    After George had separated from Jane and was living with Mary, he joined the "Colored Order of the Grand Lodge of Knights of Pythias of Mississippi," and received a benefit certificate or policy of insurance for $300, payable upon his death to his "widow or other heir."    In the course of time George died, and a contention arose between the two women as to who was entitled to collect the sum due upon the policy.    Jane, remembering George had been her husband, and in separating from her had not deemed the matter of a divorce of any consequence, claimed that she was the widow of George.    Mollie, being unable to refute successfully the claim of her adversary, defiantly produced a duly probated will executed by George just before his death, by the terms of which he undertook to devise the policy of insurance and money due thereon to her.

One of the by-laws of the society prescribed a form of benefit certificate to be issued to members, which form made the certificate payable to "the widow or heirs" of the member; another provided that it should be paid to "the widow or heirs or other legal representatives" of a deceased member.

*G. Q. Hall, Hall & Jacobson,* for appellant.

In *Independent Order, etc.,* v. *Allen,* 76 Miss., 326 (s.c., 24 South. Rep., 702), this court decided that a concubine might be made the beneficiary of an insurance benefit, *when the same is subject to the member's direction,* and this, although the organic law of the society, contains expressions indicative of moral and benevolent purpose.

That case, assuming George's right to direct disposition and the sufficiency of his designation of Mollie, would settle Mollie's right to the benefit, even though she was nothing more than a concubine.

Is there anything in the endowment laws of this order that would prevent George from designating Mollie to receive the benefits?

Section 1 of the endowment laws provides that upon satisfactory evidence of the death of a knight in good standing, who has complied with all the requirements of the order as set forth in the endowment laws, a sum not less than $300 shall be paid to his "widow, heirs, or other legal representatives."

The expression, "widow, heirs, or other legal representatives," is not a rule of descent and distribution for this benefit, but a description of who may be designated beneficiary thereof. A rule of descent and distribution would be for intestates alone.

*Miller & Baskin,* for appellee.

By the constitution of the "Colored Grand Lodge of the Knights of Pythias of the State of Mississippi," under which the lodge to which George belonged was a subordinate one, it is specially provided under the head of "persons who cannot become members of the order" as follows: "that any person known to be a habitual drunkard, professional gambler, or living in concubine adultery, cannot become a member of the order."

By reference to the benefit certificate, or policy, which is described as "a new policy form," the court will observe that the beneficiaries are restricted to "the widow or other heirs" of the brother knight, George Tutt. It seems that the form of former policies provided that the beneficiaries should be "the widow or other heirs or legal representatives," but this new policy form strikes out or leaves off the words, "or other legal representatives," so that under the policy, or benefit certificate, in this case the sole question is whether the appellant is "the widow or heir" of George Tutt. If she is neither, then she has no standing in court and cannot under any circumstances become the beneficiary under said policy.

It is a well-settled doctrine of the courts that the constitution and by-laws of an association, like the one which issued this ben-

efit certificate, constitutes a contract between the society and its members, and this is a doctrine to which our supreme court is fully committed, as shown by the case of *Carson* v. *Vicksburg Bank,* 75 Miss., 167 (s.c., 22 South. Rep., 1), where Judge Terrall, speaking for the court, says: "In our judgment the real beneficiaries can only be the persons specified in the laws of the order"—in the case at bar, "the widow and other heirs."

CALHOON, J., delivered the opinion of the court.

The policy of the benevolent order was payable "to the widow or other heirs of Brother Knight George Tutt." Very clearly Mary Jackson was his widow, and not Mollie Tutt. If there was a genuine will of George, giving the proceeds to Mollie and designating her as his wife, this could not change the result, since, under the policy, they had to go "to his widow or other heirs." This is not changed by sec. 1 of the endowment laws of the order, that the money should go to the "widow, heirs, or other legal representatives." The same laws give the form of the policy, requiring payment to the "widow or other heirs" of the deceased. The words, "or other legal representatives," in the by-laws, do not enable the member by will to devise the policy, as he tried to do in this case, diverting the benefaction from the class intended to his concubine.

*Affirmed.*